# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>*Plaintiff*,<br><br>–v–<br><br>LIZ MURRILL, in her official capacity as Attorney General of Louisiana,<br><br>*Defendant*. | **Case No. 6:23-cv-00997**<br><br>**JUDGE: Robert R. Summerhays**<br><br>**MAGISTRATE JUDGE: Carol B. Whitehurst** |

## INTERVENOR-DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.      Act 358 Is Not Impliedly Preempted ..................................................... 1

            A.     Act 358 Does Not Intrude on an Exclusively Federal Field of Operation .. 2

                  1.     The 340B Statute Does Not Govern Drug Distribution .................. 2

                  2.     LPCA's Additional Field Preemption Arguments Are Valid ......... 4

            B.     Act 358 Is Not an Obstacle to Section 340B ............................................... 6

                  1.     Act 358 Does Not Expand 340B ...................................................... 6

                  2.     Act 358 and Section 340B Operate in Separate Fields of Oversight ................................................................................................. 8

            C.     Act 358 Is Entitled to a Presumption Against Preemption ........................ 9

    II.     Act 358 Is Not Unconstitutionally Vague ............................................. 10

CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................................................ 2, 5, 9

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ........................................................................ 8

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .................................. 7

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ........................................... 6

*Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ................................................ 9

*Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003) ................................................................ 7

*Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404 (5th Cir. 2010) .................................. 1

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................................... 10

*Hersh v. United States ex rel. Mukasey*, 553 F.3d 743 (5th Cir. 2008) ......................................... 5

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707 (1985) ............. 1, 2, 9, 10

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ..................................................................................... 3

*In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014) ............................................................... 8

*In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) ...................... 6

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809 (5th Cir. 1979) .......... 10

*Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) ............................................................... 2, 9

*Mother Zion Tenant Ass'n v. Donovan*, 55 A.D. 3d 333 (N.Y. App. Div. 2008) .......................... 7

*NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022) ........................................................... 4

*Novartis Pharms. Corp. v. Espinosa*, No. 21-CV-1479, 2021 WL 5161783
  (D.D.C. Nov. 5, 2021) ................................................................................................................ 3

*Pharm. Rsch. & Mfrs. of Am. v. McClain*, 645 F. Supp. 3d 890 (E.D. Ark. 2022),
  argued No. 22-3675 (8th Cir. Sept. 20, 2023) ........................................................................ 1, 8

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) .................................................................. 2

*Sanofi Aventis U.S. LLC v. United States Dep't of Health and Hum. Servs.*,
  58 F.4th 696 (3d Cir. 2023) .................................................................................................... 3, 7

*Sanofi-Aventis U.S., LLC v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-634 (D.N.J. June 24, 2021) ................................................................................................ 8

*United States v. Bird*, 124 F.3d 667 (5th Cir. 1997) ...................................................... 10

*United States v. Hicks*, 980 F.2d 963 (5th Cir. 1992) ................................................... 10

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985) .................... 5, 6

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982) .............. 10

*Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ........................................... 4

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ............... 4

*Wis. Dep't of Indus., Lab., & Hum. Rels. v. Gould, Inc.*, 475 U.S. 282 (1986) ............. 9

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ................................................................ 2, 9

*Zuber v. Allen*, 396 U.S. 168 (1969) .............................................................................. 6

**Federal Statutes**

42 U.S.C. § 256b(a)(8) ..................................................................................................... 2

Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111–148, § 7101, 124 Stat. 821 (2010) .............................................................................................. 5

**State Statutes**

La. Stat. Ann. § 37:3461, *et seq.* .................................................................................... 8

La. Stat. Ann. § 40:1060.13 ............................................................................................ 8

La. Stat. Ann. § 40:2884(A), ........................................................................................... 7

La. Stat. Ann. § 40:2886 ............................................................................................. 1, 7

**Federal Regulations**

42 C.F.R. § 10.11 ............................................................................................................ 7

42 C.F.R. § 10.11(b) ....................................................................................................... 7

**Federal Registers**

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,549 (Aug. 23, 1996) ("1996 Guidance") ........................ 3, 6

**Other Authorities**

*340B Office of Pharmacy Affairs Information System*, HRSA (Nov. 2021), https://www.hrsa.gov/opa/340b-opais) ........................................................................................ 5

340B Program Improvement and Integrity Act of 2007, S. 1376, 110th Cong. § 5(a) (2007) ....... 5

Apexus Inc.'s Mot. for S. J. on Conduct-Based Immunity & Br. in Support, *The Vaccine Center LLC v. GlaxoSmithKline LLC*, No. 2:12-cv-01849 (D. Nev. July 22, 2014), ECF No. 158, Ex. A at 27 ................................................................................................................................... 2

*Contract Pharmacy Services*, HRSA (June 2022), https://www.hrsa.gov/opa/implementation-contract ................................................................................................................................. 7

Healthy America Act of 2005, S. 4, 109th Cong. § 332(b) (2005) ................................................ 5

## INTRODUCTION

Act 358 is not preempted because it plainly governs drug distribution, and the federal 340B statute plainly governs drug pricing. In fact, a section of Act 358 titled "Federal Preemption" states that the state law must be applied consistent with federal law. La. Stat. Ann. § 40:2886. PhRMA's preemption arguments failed in a case that upheld an Arkansas law substantially similar to Act 358. *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 645 F. Supp. 3d 890 (E.D. Ark. 2022), argued No. 22-3675 (8th Cir. Sept. 20, 2023). The 340B statute does not expressly preempt state drug distribution laws. Nor does it impliedly preempt those laws because it is not a comprehensive regulatory scheme and is silent on drug distribution. And Congress acquiesced to state regulation of drug distribution by declining to address contract pharmacy arrangements in amending the 340B statute under the Patient Protection and Affordable Care Act ("ACA"). Lastly, the term "interfere" in Act 358 is not unconstitutionally vague, and a person of ordinary intelligence would understand what Act 358 prohibits.

## ARGUMENT

### I.     Act 358 Is Not Impliedly Preempted

The 340B statute does not impliedly preempt Act 358 because the 340B statute governs drug pricing, and Act 358 governs drug distribution. Act 358 references Section 340B merely to describe the already discounted drugs subject to the Act's distribution requirements. Courts presume that federal law does not preempt state law because states are independent sovereigns from the federal government. *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985); *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) ("This court has explained that the presumption against preemption is applicable to areas of law traditionally reserved to the states . . . .") (quotations omitted). Courts must assume that federal law does not supersede the historic police powers of states unless Congress expresses a "'clear

1

and manifest'" purpose. *Hillsborough Cnty.*, 471 U.S. at 715 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Congress expressed no clear and manifest purpose in the 340B statute to preempt state distribution laws.

### A.     Act 358 Does Not Intrude on an Exclusively Federal Field of Operation

The 340B statute does not establish a regulatory framework that is "so pervasive" that it "left no room for the States to supplement it," nor does it involve a federal interest so strong that it can be assumed to "preclude enforcement of state laws on the same subject." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (internal quotations omitted)).

#### 1.     The 340B Statute Does Not Govern Drug Distribution

PhRMA asserts that the sole question in this case is "whether federal law *permits* Louisiana to mandate that manufacturers provide drugs at the 340B price to pharmacies" PhRMA Reply 8, ECF No. 60-2 (emphasis added), but the true question is whether federal law *prohibits* Louisiana from regulating the distribution of drugs already discounted under the 340B statute. The 340B statute is generally silent on drug distribution systems, which enables manufacturers to sell 340B drugs through wholesalers and covered entities to purchase drugs for delivery to contract pharmacies. The statute does not intrude on Louisiana's sovereign right to regulate the distribution of drugs purchased by 340B covered entities.

Congress did not regulate drug distribution in the 340B statute. PhRMA Reply 7. The two occurrences of the word "distribution" in the statute are in a provision authorizing a "prime vendor" program to give covered entities an option to obtain 340B drugs more conveniently. 42 U.S.C. § 256b(a)(8). The prime vendor contract requires its distribution arrangements to "comply with all applicable … State statutes and regulations." Apexus Inc.'s Mot. for S. J., *The Vaccine Center LLC v. GlaxoSmithKline LLC*, No. 2:12-cv-01849 (D. Nev. July 22, 2014), ECF

2

No. 158, Ex. A at 27. The incidental reference to "distribution" in the statute does not regulate 340B drug distribution generally. PhRMA Reply 6-7. Indeed, the Department of Health and Human Services ("HHS") has long stated that the 340B statute "is silent as to permissible drug distribution systems." Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,549 (Aug. 23, 1996) ("1996 Guidance").

PhRMA mischaracterizes two federal cases concerning manufacturer unilateral restrictions to deny 340B pricing for drugs shipped to contract pharmacies. PhRMA Reply 8-9 (discussing *Sanofi Aventis U.S. LLC v. United States Dep't of Health and Hum. Servs.*, 58 F.4th 696 (3d Cir. 2023) ("*Sanofi*") and *Novartis Pharms. Corp. v. Espinosa*, No. 21-CV-1479, 2021 WL 5161783 (D.D.C. Nov. 5, 2021) ("*Novartis*")). The question in these cases was whether the 340B statute requires drug companies to deliver 340B drugs to an unlimited number of contract pharmacies, and in analyzing that question, the *Sanofi* court concluded that "[t]he text is silent about delivery." *Sanofi*, 58 F.4th at 699, 703; *see also Novartis*, 2021 WL 5161783 at *2 (same). The *Sanofi* court held that the 340B statute does not require delivery to an unlimited number of contract pharmacies, but assuming that holding is correct, it hardly evinces a congressional intent to intrude on state distribution laws. The court noted that "courts must resist the urge to fill in words that Congress left out." *Sanofi*, 58 F.4th at 699.

The holding in *Hines v. Davidowitz*, 312 U.S. 52 (1941), is inapposite. PhRMA Reply 9. That case held that a state alien registration law was preempted because the law impacted foreign affairs. *Hines*, 312 U.S. at 63-64, 67-68, 73-74. The Court expressly distinguished state power to tax or to label food from matters of foreign affairs like alien registration. *Id.* Act 358 regulates intra-state distribution of drugs, similar to the broad based power to tax or to label food that the Court recognized as squarely within state authority. *Id.*

3

PhRMA argues that the 340B administrative dispute resolution ("ADR") process is the proper venue to resolve the dispute in this case, citing to a federal government brief in another case and ADR petitions filed by covered entities to seek access to 340B pricing at contract pharmacies. PhRMA Reply 11. Tellingly, the federal government has not sought to intervene or file an amicus brief in this case or in PhRMA's challenge to Arkansas' drug distribution law, so nothing can be inferred from the government's position based on a filing in an unrelated case. Similarly, the covered entities that filed the ADR petitions are not parties to this case.[1]

### 2. LPCA's Additional Field Preemption Arguments Are Valid

PhRMA's suit is a facial challenge to Act 358, which has not yet been enforced against any drug manufacturer. PhRMA argues that Louisiana will have to answer several questions to implement Act 358, principally focused on whether a 340B covered entity legitimately participates in the 340B program. PhRMA Reply 12. Review of such questions is improper because "pre-enforcement facial challenges to legislative acts are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (quotations omitted); *see also NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 448-49 (5th Cir. 2022).

PhRMA "can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the Act would be valid." *Wash. State Grange*, 552 U.S. at 449 (quotations omitted); *see also Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386-87 (5th Cir. 2013).[2] Moreover, PhRMA's concerns are premature because Louisiana could implement

---

[1] PhRMA also argues that the holding in *Astra* should control in this case. PhRMA Reply 10-11. Intervenor, the Louisiana Primary Care Association ("LPCA"), explained in its opening brief why PhRMA's reliance on *Astra* is misplaced. LPCA Opening Br. 10-11, ECF No. 45.
[2] PhRMA's questions can easily be answered through HHS's Health Resources Services Administration ("HRSA") website, which lists participating 340B covered entities and their contract pharmacy arrangements. LPCA Opening Br. 2-21 (citing *340B Office of Pharmacy Affairs Information System*, HRSA (Nov. 2021), https://www.hrsa.gov/opa/340b-opais).

4

regulations addressing the issues it raises. *See Arizona v. United States*, 567 U.S. 387, 457-58 (2012) (Alito, J., concurring in part). PhRMA's "hypothetical applications" should not "short circuit the democratic process by preventing [a] law[] embodying the will of the people from being implemented in a manner consistent with the Constitution." *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 763 (5th Cir. 2008) (cleaned up).

PhRMA incorrectly argues that LPCA failed to show that Congress acquiesced to state authority to oversee drug distribution. PhRMA Reply 14-15. Congress acquiesced to contract pharmacy arrangements in multiple proposed bills. The Healthy America Act of 2005 and the 340B Program Improvement and Integrity Act of 2007 contained a section on the use contract pharmacies. Healthy America Act of 2005, S. 4, 109th Cong. § 332(b) (2005); 340B Program Improvement and Integrity Act of 2007, S. 1376, 110th Cong. § 5(a) (2007). Congress, therefore, was aware of the existence of contract pharmacy distribution arrangements and chose not to enact legislation that would govern such arrangements.

PhRMA argues that Congress's silence on drug distribution and contract pharmacies in the ACA should not be viewed as acquiescence.[3] PhRMA Reply 14. But Congress expansively modified the 340B statute in the ACA, adding several categories of covered entities, program integrity measures, and the ADR program. ACA, Pub. L. No. 111–148, § 7101, 124 Stat. 821. HHS's original contract pharmacy guidance was published fourteen years earlier. 1996

---

[3] PhRMA truncates a quote to argue that Congress's silence on contract pharmacy arrangements in the ACA should not be viewed as acquiescence to state drug distribution laws (PhRMA Reply 14), but the full quote shows that the Court found such silence compelling: "Although we are chary of attributing significance to Congress' failure to act, a refusal by Congress to overrule an agency's construction of legislation is at least some evidence of the reasonableness of that construction, particularly where the administrative construction has been brought to Congress' attention through legislation specifically designed to supplant it." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 137 (1985).

5

Guidance, 61 Fed. Reg. at 43,551. When Congress revisits a statute that has given rise to a longstanding administrative interpretation and decides not to make changes, that decision is "persuasive evidence that the interpretation is the one intended by Congress."[4] *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 846 (1986) (citation omitted)); *see also United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 137 (1985). Courts recognize that Congress is aware of state laws that are traditionally within the state's power and that the decision not to override those state laws demonstrates acquiescence to them.[5] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 175 (1st Cir. 2009) ("Congress relied on the existence of state consumer protection and fraud statutes to combat severely manipulative pricing schemes resulting in overpayments . . . ."). Congress must be presumed to have known that states traditionally regulate drug distribution when it adopted the ACA.

    **B.    Act 358 Is Not an Obstacle to Section 340B**

Act 358 does not extend 340B discounts to contract pharmacies or impose new manufacturer duties under the 340B statute. PhRMA's arguments to the contrary are unpersuasive.

    **1.    Act 358 Does Not Expand 340B**

Act 358 is not an obstacle to the 340B program, and the *Sanofi* decision does not compel a different conclusion. In its opening brief, PhRMA pointed to *Sanofi*, arguing that the decision "suggests" only one-to-one transactions between drug companies and covered entities. PhRMA

---

[4] PhRMA's contention that the cases cited "do not support [Intervenor's] acquiescence argument" is wrong. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (relying on congressional silence but clarifying that the court "need not . . . rely *simply* on congressional 'silence . . . .'" (emphasis added)).

[5] PhRMA argues that LPCA's citation to Congress members' statements are "'not impressive legislative history.'" PhRMA Reply 15 (citing *Zuber v. Allen*, 396 U.S. 168, 187 (1969)). But LPCA is not relying solely on these statements; rather the statements corroborate other evidence that Congress understood that drug distribution is governed by state law, as explained above.

Opening Br. 21 (quoting *Sanofi*, 58 F.4th at 704). LPCA countered that an HHS regulation states the opposite, defining 340B overcharges to include orders placed by "agents," which would include contract pharmacies, and that the Third Circuit should have applied *Chevron* deference to this regulation. LPCA Opening Br. 22-23 (citing 42 C.F.R. § 10.11(b) and *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). PhRMA's response is to imply that this regulation exceeds HHS's rulemaking authority and to cite a pending Supreme Court case addressing the *Chevron* doctrine. PhRMA Reply 18 n.11. But 42 C.F.R. § 10.11 is on the books, has not been challenged by PhRMA or any other plaintiff, and it plainly states that 340B orders are not limited to one-to-one transactions. Even if the Supreme Court alters the *Chevron* doctrine, 42 C.F.R. § 10.11 would still be in effect. All that would change would be the standard that a court would apply in any future case concerning that regulation.

PhRMA's reliance on two cases addressing Section 8 of the United States Housing Act of 1937 is misplaced. PhRMA Reply 20. One case addressed a state law that "convert[ed] a voluntary federal program into a mandatory one…." *Mother Zion Tenant Ass'n v. Donovan*, 55 A.D. 3d 333, 336 (N.Y. App. Div. 2008). The other case addressed a state law that "regulate[d] or restrict[ed] the actions of the federal government under its own federal program." *Forest Park II v. Hadley*, 336 F.3d 724, 732 (8th Cir. 2003). Unlike these cases, Act 358 does not conflict with Section 340B by altering the terms of the federal program.

Act 358 does not expand the scope of the 340B statute. PhRMA Reply 21. Act 358 protects Louisiana covered entities except for arrangements prohibited by HHS. La. Stat. Ann. §§ 40:2884(A), 40:2886. Covered entities register contract pharmacy arrangements with HHS to ensure 340B compliance by the contract pharmacy. *Contract Pharmacy Services*, HRSA (June 2022), https://www.hrsa.gov/opa/implementation-contract. Because Act 358 allows only

arrangements that are registered with, and sanctioned by, HHS, it does not expand 340B.

PhRMA's allegations about inventory replenishment models (at 21-22) are not applicable to this case and should be addressed to a 340B ADR panel. Indeed, HHS has endorsed the replenishment model. Decl. of Krista M. Pedley, ¶¶ 5-12, *Sanofi-Aventis U.S., LLC v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-634 (D.N.J. June 24, 2021), ECF No. 93-2 ("Pedley Decl.").

### 2. Act 358 and Section 340B Operate in Separate Fields of Oversight

Act 358 does not conflict with the 340B statute because the 340B statute and Act 358 operate in completely separate and harmonious spheres: Section 340B regulates prices and Act 358 regulates distribution. Again, PhRMA largely ignores a recent holding that rejected its challenge to an Arkansas law that is substantially similar to Act 358. That court stated that the Arkansas state law "is not obstacle to the purpose and objective of the 340(B) Program." *Pharm. Rsch. & Mfrs. of Am.*, 645 F. Supp. 3d at 901.

PhRMA relies on *In re Deepwater Horizon,* which is inapplicable. *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014). The "legal chaos" that concerned the Fifth Circuit in that case would have resulted from multiple states applying their clean water laws in maritime waters subject to federal jurisdiction. *Id.* at 170-71. In contrast, Act 358 applies to drugs ordered by Louisiana covered entities for shipment to Louisiana pharmacies and does not conflict with other state laws. Significantly, drug companies are already subject to Louisiana intra-state distribution requirements. *See, e.g.*, La. Stat. Ann. § 37:3461, *et seq.* (wholesale distribution of prescription drugs); La. Stat. Ann. § 40:1060.13 (drug shipment). Likewise, PhRMA relies on *Chae v. SLM Corp.*, but there Congress gave "a clear command for uniformity" in student loan processing. *Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010). Congress thus expressly sought to prevent the state causes of action at issue in *Chae* but gave no "clear command" in the 340B statute to preempt state distribution laws.

8

PhRMA cites two cases for the proposition that separate remedies cannot apply to the same activity, but both cases reviewed state laws that imposed sanctions on conduct that was also penalized under a federal statute. PhRMA Reply 24 (citing *Wis. Dep't of Indus., Lab., & Hum. Rels. v. Gould, Inc.*, 475 U.S. 282 (1986) and *Arizona v. United States*, 567 U.S. 387 (2012)). Those cases do not apply here because Act 358 does not penalize violations of the 340B statute.

Contrary to PhRMA's assertions, Act 358 does not usurp the 340B statute's ADR enforcement powers, and LPCA did not cite the language "for drugs purchased" and "purchased" in the 340B ADR provisions to allege that "HHS only regulates covered entities." PhRMA Reply 25. Rather, Congress's word choice shows that covered entities, not contract pharmacies and other parties in the distribution process, are the "participants" that are the focus of ADR enforcement and that Congress never endeavored to regulate comprehensively or create a unitary dispute resolution system addressing distribution of 340B-priced drugs.

### C. Act 358 Is Entitled to a Presumption Against Preemption

The longstanding presumption against federal preemption of state law is fully applicable in this case, despite PhRMA's assertions. PhRMA Reply 26-27. Under this principle, courts presume that Congress superseded state police powers only if it expresses a "'clear and manifest'" purpose to do so. *Hillsborough Cnty.*, 471 U.S. at 715 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)); *see also Wyeth*, 555 U.S. at 565; *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146-47 (1963) (courts should not "conclude that Congress legislated the ouster of [a] [State] statute . . . in the absence of an unambiguous congressional mandate").

PhRMA argues that Act 358 does not address areas that are traditionally regulated by state law and instead "acts directly on, implicates, and expands 340B." PhRMA Reply 26–27. Act 358 addresses drug distribution, which directly impacts the health of Louisiana residents,

9

which courts have long recognized as a historic area of a state's police power. *See Hillsborough Cnty.*, 471 U.S. at 719 ("[R]egulation of health and safety matters is primarily, and historically, a matter of local concern.").

## II. Act 358 Is Not Unconstitutionally Vague

The term "interfere" in Act 358 is not unconstitutionally vague, as the Fifth Circuit has repeatedly held. *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 830-31 (5th Cir. 1979) ("'[U]nreasonably interfere' [is] 'plainly' not vague.") (citation omitted); *United States v. Bird*, 124 F.3d 667, 683-84 (5th Cir. 1997) ("[W]e hold that the Act's terms ["interfere with"] are not unconstitutionally vague."). Unless a statute proscribes a substantial amount of constitutionally protected conduct, this Court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494-97 (1982); *United States v. Hicks*, 980 F.2d 963, 972 (5th Cir. 1992). Therefore, PhRMA's allegations that Act 358 "interferes with the right of free speech" and "a more stringent vagueness test should apply" are erroneous. PhRMA Reply 28.

The thrust of Act 358 is to regulate pharmaceutical manufacturer obligations regarding distribution of 340B drugs, which is not constitutionally protected conduct. Further, PhRMA understands that Act 358 "penalize[s] manufacturers for not supplying 340B-discounted drugs to contract pharmacies." PhRMA Reply 17. Act 358 provides a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Bird*, 124 F.3d at 683 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 106-09 (1972)). Therefore, Act 358 is constitutional and not "impermissibly vague." *Vill. of Hoffman Ests.*, 455 U.S. at 494–97.

## CONCLUSION

For the foregoing reasons, the Court should grant LPCA's motion for summary judgment and deny PhRMA's motion for summary judgment.

10

Dated: February 9, 2024                                   Respectfully submitted,

*/s/ Carroll Devillier, Jr.*                              */s/Ronald S. Connelly*
Carroll Devillier, Jr.                                    Ronald S. Connelly*
LA Bar No. 30477                                          D.C. Bar No. 488298
Breazeale, Sachse & Wilson, LLP
One American Place                                        /s/*Barbara Straub Williams*
301 Main Street, Suite 2300                               Barbara Straub Williams*
Baton Rouge, LA 70801                                     D.C. Bar No. 396582
T: (225) 381-8013
Carroll.Devillier@bswllp.com                              William von Oehsen
*Counsel for Intervenor Louisiana Primary*                D.C. Bar No. 423381
*Care Association*
                                                          Fernando Montoya*
                                                          D.C. Bar No. 90007361

                                                          Hannah Comeau*
                                                          D.C. Bar No. 90008945

                                                          POWERS PYLES SUTTER & VERVILLE, PC
                                                          1501 M Street, N.W., 7th Floor
                                                          Washington, DC 20005
                                                          T: (202) 466-6550
                                                          Ron.Connelly@PowersLaw.com
                                                          *Counsel for Intervenor-Defendant Louisiana*
                                                          *Primary Care Association*
                                                          *Admitted pro hac vice

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Intervenor-Defendant's Summary Judgment Reply Brief was electronically filed with the Clerk of Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record by electronic means.

Dated: February 9, 2024                              Respectfully submitted,

                                                      */s/Ronald S. Connelly*
                                                      Ronald S. Connelly*
                                                      D.C. Bar No. 488298
                                                      POWERS PYLES SUTTER & VERVILLE, PC
                                                      1501 M Street, N.W., 7th Floor
                                                      Washington, DC 20005
                                                      T: (202) 466-6550
                                                      Ron.Connelly@PowersLaw.com
                                                      *Counsel for Intervenor-Defendant Louisiana Primary Care Association*
                                                      *Admitted pro hac vice